IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:22-CR-32 |
| | ) | |
| v. | ) | JUDGES CRYTZER/POPLIN |
| | ) | |
| JUSTIS JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SEVERANCE

The United States of America, by and through the United States Attorney for the Eastern District of Tennessee, hereby responds in opposition to defendant Justis Johnson's Motion to Sever Count Four of Superseding Indictment (Doc. 56) ("Motion"). Neither the Motion nor its accompanying Memorandum of Law (Doc. 57) ("Memorandum") establishes a basis for severing the fourth count of the superseding indictment. Accordingly, the Motion should be denied.

*I.    Synopsis*

Defendant Justis Johnson committed the offenses of production and distribution of child pornography by taking pornographic pictures of her minor daughter (whose initials are "A.N.") and uploading them to the Internet. Then, in an effort to get away with her crimes, Johnson destroyed evidence and tried to get A.N. to blame the pornography offenses on someone else. It is proper for all of these offenses to be charged in one indictment and be considered by the same jury. Accordingly, her motion to sever Count Four from the other charges of the superseding indictment should be denied.

## II. Facts

On December 30, 2020, defendant Justis Johnson used her iPhone 11 to take pornographic photographs of her 12-year-old daughter, A.N., who was fully nude and shaving in the bathtub  Four days later, on January 3, 2021, Johnson used a "Tor"[1] or "onion" browser to upload the images of A.N. to a Dark Web bulletin board known as "PublicPedoPub," which catered to individuals who were interested in sexual activity with children.  Johnson's statements to other participants on the online forum left little to the imagination regarding how she produced the images and her efforts to upload them:

> **FEMALE4CP:**[2] "Hey everyone I am a dark web noob. I was able to spend a couple of nights taking layers off of the onion, bringing me to all you lovely people. (emoji) I didn't ever imagine it would ever be a part of my identity that I would be open with due to that taboo. This whole other world has my mind blown. Sorry, it booted me for whatever reason. I have actually taken some photos of my 12-year-old over this holiday; but I don't have the slightest idea on how to upload them?
>
> I have a daughter who is 6, son who is 7, and the photos and videos I have are of my 12-year-old daughter.
>
> **@rasiedopen:** I am a single mom more or less, have been separated since 2015. I currently have a man in my life that enjoys this the same.
>
> **@luvthem2**: I am working on trying to upload things into this magical onion darkness we are within.
>
> **@deskjet3631:** I have to be honest; I am into the hurtcore and love rape. I think I cross the line of lines even within this world. However, my son… I can't wrap my head around it. I could hold my youngest down to be had by anyone. I am actively raising my 12 year old girl to be like I was." "I will figure out these fucking

---

[1] "Tor" is an initialism for "The Onion Router," which provides for essentially anonymous Internet communication by making it difficult to trace a user's online activities.  In addition, it provides a means for accessing the Dark Web.

[2] All of the statements copied above were made by the defendant, who used the identities "FEMALE4CP," "2ndFemale4CP," and "4thFemale4CP."  Statements preceded by the "@" symbol and a username (e.g., "@rasiedopen") are the defendant's communications with another individual user of PublicPedoPub.

chats. Sigh. It keeps reloading on me and wanting to shift me out. I just had to reload everything and create another alias. Lol I have to upload one photo at a time with this? What about the video?"

**2ndFemale4CP:** "I shared the link and it booted me, why?

**4thFemale4CP:** "kicked out again

@pringcola
[IMGx6470x1x.jpg](http://itgb2brobdql7rritlaxwrweq3ujvs42zhza2v4bo47jvh2lehhj6xqd .onion/nk9EOv/IMGx6470x1x.jpg)

Maybe this works...
[IMGx6470x1x.jpg](http://itgb2brobdql7rritlaxwrweq3ujvs42zhza2v4bo47jvh2lehhj6xqd.onion/nk9EOv/IMGx6470x1x.jpg)

I fucking did it\!

That's my oldest; I was teaching her to shave this past week and took the opportunity to take a lot of photos. I am working on figuring this uploader out; to share with everyone to appreciate. I have so many; and videos. It is only permitting one upload at a time.

@deskjet3631 Yes she is, I have a video of me putting shaving cream on her pussy. I just don't know how to get it all to you.

This one is 12.

I genuinely imagined the upload process to be a lot less demanding. I wasn't able to get the videos. My phone into the computer has formatted them into some shit I can't upload.

Here is my oldest, she is 12 and I have tasted her…amongst other things. This past weekend I taught her to shave.

It worked and didn't kick me off… the videos I still cannot work out.

Mine are G/12, G/6 and B/7

@pringcola Our pussies are exactly the same. My partner has stated so many times how much our pussies look the same.

@satinserchI actually just got her new panties and spent the other night rubbing in between her thighs, up her ass cheeks and all over her body wearing these.

3

> @pussynator that's the thing; I made a screen shot of a screen shot of a video, then transferred it over to my computer. I wonder if I should have cropped it on "Paint" maybe? Omg. Thank you from all that is in me for letting me know.
>
> @pringcola They told me the address to the home I own.
>
> @twistedPedoDad Well one person was able to give me my home address due to whatever I did with uploads. The other person does want to chate solely with me. I am avoiding.

The pornographic images and online statements of Johnson came to the attention of an investigator with Homeland Security Investigations, who was able to determine the location where one of the pictures was taken - along with other information - using EXIF[3] data embedded in the image.

On January 14, 2021, investigators with the Homeland Security Investigations and the Knoxville Police Department, Internet Crimes Against Children Task Force, executed a search warrant at Johnson's residence and seized various items, including Johnson's personal and work iPhones. While execution of the warrant was taking place, agents interviewed Johnson and Brett Kavanaugh (her boyfriend at that time). After the agents left, Johnson and Kavanaugh immediately drove to their workplace and obtained Kavanaugh's work iPad. They then proceeded to a McDonalds, where they took advantage of the free Wi-Fi access to erase remotely Johnson's work iPhone and Kavanaugh's personal iPhone.

Because of the nature of the alleged offenses, the Tennessee Department of Children's Services removed from the children, including A.N., from Johnson's home. Johnson was not permitted to communicate with the children without supervision. In subsequent months,

---

[3] EXIF, or "exchangeable image file format," is a form of metadata that is frequently embedded in digital image files. It generally contains information such as camera settings, the date and time the image file was created, and the GPS coordinates for the location where the image was made.

however, it came to the Government's attention that Johnson had been secretly communicating with A.N.

In December, 2021, investigators learned that A.N. had surreptitiously bought a no-contract cellular phone. Several days after the purchase, A.N.'s father caught her with the phone and confiscated it. He turned it over to the Knoxville Police Department for examination. Investigators were able to access data on the phone and recovered call logs and SnapChat communications between A.N. and Johnson (who used the moniker "gmachine_e"). Most of the communications revolved around the investigation and who was to blame for the upload of pornographic pictures to PublicPedoPub.

In their furtive communications, Johnson encouraged A.N. to place blame for the uploads upon several children that had come to their home. She told A.N. to claim that she had taken the pictures herself, that they were in her old Snapchat account, and that some of her classmates had accessed the photos and uploaded them to the Dark Web. Johnson told her daughter that "if we had someone to blame this would end." In addition, she told A.N. to "get a damn story together like we had talked and call Sherry [A.N.'s therapist]. . . And you tell her that you think you know who did this and you want to talk to her person and alone."

A.N. informed Johnson that she had already told the story about Kavanaugh (referencing an earlier scheme to frame Johnson's former boyfriend as the perpetrator), to the therapist. In response, Johnson said:

> "I say blame the girls. Kids, 12, 13, etc. can't get in trouble. If you said you think you did this to sherry, or told her you uploaded something it would all be over. . . but then they would think you're lying for me . . . I'd just add that you heard through kids from that school that P.[4] and whoever talked about getting into you [sic] Snapchat and sharing pictures . . . You

---

[4] The United States has replaced the minor's name with the first initial ("P."), in accordance with Fed. R. Crim. P. 49.1(a)(3).

5

have photos in your old private Snapchat. The girls got in there and have told people at the old school or you even in disappearing messages that they shared your stuff . . . Life or death here. Tell sherry you had these damn photos or video messages in your old Snapchat."

On April 6, 2022, Johnson and Kavanaugh were named in a three-count indictment, which charged Johnson with production and distribution of child pornography, and charged both defendants with destruction of evidence in order to obstruct an investigation. When the United States uncovered Johnson's scheme to influence her daughter's testimony and shift the responsibility for the child pornography crimes to someone else, the Government decided to supersede the indictment and add the witness tampering charge that is the focus of motion *sub judice*.

### III.    Legal Standard

Rule 8(a) of the Federal Rules of Criminal Procedure provides as follows:

Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Joinder of defendants is "strongly favor[ed]" under Rule 8(b) of the Federal Rules of Criminal Procedure. *United States v. Breinig*, 70 F.3d 850, 852 (6th Cir. 1995); *see also United States v. Baltas*, 236 F.3d 27, 33 (1st Cir. 2001). The Court "may, to the extent it is consistent with due process principles, construe the Rule broadly "to promote the goals of trial convenience and judicial efficiency." *United States v. Graham*, 275 F.3d 490, 512 (6th Cir. 2001) (quoting *United States v. Wirsing*, 719 F.2d 859, 862 (6th Cir. 1983)); *United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987) (noting that "the predominant consideration is whether joinder would serve the goals of trial economy and convenience"); *see also United States v. Montgomery*, 358 Fed. Appx. 622, 628 (6th Cir. 2009) (consolidation of witness tampering and drug charges was

6

appropriate, where the tampering charges were based upon the defendant's attempts to convince a co-conspirator to change his testimony about underlying drug offenses); *United States v. Serran-Ramirez*, 319 F. Supp.3d 918, 924 (M.D. Tenn. 2018) (finding it appropriate to join drug offenses and witness tampering, where the latter was part of the defendant's plan to perpetuate the drug trafficking scheme). "Joinder is proper where two crimes – and their proof – are intertwined." *United States v. Carnes*, 309 F.3d 950, 957 (6th Cir. 2002) (finding "no doubt" that a witness tampering count – based upon defendant's attempt to get someone else to claim ownership of a gun that provided a basis for a felon-in-possession charge – was intertwined with the weapon and ammunition charges), citing *United States v. Jacobs*, 244 F.3d 503 (6th Cir. 2001).

Where the charges against defendants have been improperly joined, the remedy is severance under Fed. R. Crim. P. 14. This rule allows joinder to be attacked if facts outside the indictment make joinder unduly prejudicial. Such motions, however, are granted only where the dominant public interest in joint trials is outweighed by substantial prejudice arising from case-specific problems. *Zafiro v. United States*, 506 U.S. 534, 537 (1993). For a court to order a severance under Rule 14, "[a] defendant must show compelling, specific and actual prejudice from a court's refusal to grant a motion to sever." *United States v. Saadey*, 393 F.3d. 669, 678 (6th Cir. 2005); *United States v. Moreno*, 933 F.2d 362, 369 (6th Cir. 1991) ("Without a showing of compelling prejudice, a motion for severance should not be granted"). The burden of establishing prejudice sufficient to justify severance lies with the defendant. *Thomas v. United States*, 849 F.3d. 669, 675 (6th Cir. 2017).

## IV. Analysis

The reason Johnson seeks severance of Count Four from the other counts is obvious: Her secretive communications with A.N. provide highly convincing circumstantial evidence of the child pornography crimes. If Johnson somehow managed to have the witness tampering charge severed from the rest of the superseding indictment, she would presumably move *in limine* for a ruling – the granting of which the United States would oppose - barring the prosecution's use of the text messages with her daughter. While the United States' evidence of Johnson's production and distribution of child pornography is already compelling, it is made even stronger by proof of Johnson's efforts to enlist the help of her minor child to concoct a false narrative. Such are not the actions of an innocent person.

The defendant has failed to articulate any reason that the offense charged in Count Four of the First Superseding Indictment should be tried separately from the other charges. To the contrary, Johnson's acts of obstruction that form the basis for Count Four are inextricably linked to the acts alleged in Counts One and Two; the only reason that the defendant engaged in witness tampering was to fabricate a defense against the child pornography charges. There is clear judicial economy in having one trial instead of several, and having one jury consider all of Johnson's offenses during a single trial is more likely to produce a consistent result. Requiring the Government to put on a separate trial to prove the witness tampering offense, particularly where the evidence of Count Four is intertwined with the child pornography counts, "would violate the spirit of Rule 8(a), which is to 'promote the goals of trial convenience and judicial efficiency." *United States v. Tran*, 433 F.3d 472, 478 (6th Cir. 2006), quoting *United States v.*

*Wirsing*, 719 F.2d 859, 862 (6th Cir. 1983). Accordingly, the defendant's request for severance should not be granted.

### IV. Conclusion

For the foregoing reasons, the Motion for Severance should be denied.

Respectfully submitted,

FRANCIS M. HAMILTON III
United States Attorney

By: */s/ Frank M. Dale, Jr.*
FRANK M. DALE, JR.
Assistant United States Attorney
800 Market Street, Suite 211
Knoxville, Tennessee 37902
Telephone: (865) 545-4167
Email address: Frank.Dale@usdoj.gov
D.C. Bar No. 454048